UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YSLETA DEL SUR PUEBLO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-00760 (ESH) |
| NATIONAL INDIAN GAMING COMMISSION, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Defendant National Indian Gaming Commission ("NIGC") has moved to transfer venue to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1404(a). Because this action could have been brought in the Western District of Texas, and because transfer to that jurisdiction is in the public interest, the motion will be granted.

## BACKGROUND

In the underlying action, plaintiff Ysleta del Sur Pueblo ("Pueblo") challenges NIGC's determination that the Pueblo is not under NIGC jurisdiction for funding and other purposes. (Compl. ¶ 1, Ex. C.) Plaintiff has sued defendant under the United States Constitution, federal common law, the Restoration Act, the Indian Gaming Regulatory Act[1] ("IGRA"), the Declaratory Judgment Act, the Administrative Procedures Act ("APA"), and the All Writs Act.

---

[1] The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, permits federally-recognized Indian tribes to conduct gaming on "Indian lands." The Act established NIGC, a commission of the Department of the Interior, and bestowed it with the power to monitor and inspect gaming activities on Indian lands. *Id.* §§ 2704, 2706.

(Id. ¶ 2.) Plaintiff seeks injunctive relief compelling defendant to exercise jurisdiction over the gaming activities of the Pueblo and to provide technical assistance and training. (Compl. at 5.)

On October 14, 2009, plaintiff's counsel wrote to defendant requesting that NIGC reconsider its decision not to provide the Pueblo with training. (Compl., Ex. B.) Defendant responded with a letter denying plaintiff's request on February 23, 2010, from NIGC headquarters in Washington, D.C. (Compl., Ex. C.) In this letter, NIGC relied on a Fifth Circuit decision, *Ysleta del Sur Pueblo v. Texas*, 36 F.3d 1325 (5th Cir. 1994), *cert. denied*, 514 U.S. 1016 (1995), in concluding that plaintiff's activities are governed by the Restoration Act and not IGRA. (Compl., Ex. C.) Because IGRA does not govern plaintiff, NIGC explained that the Pueblo was not under NIGC jurisdiction. (*Id.*)

The Fifth Circuit decision relied upon by NIGC in its February 23, 2010 letter is part of litigation that has gone on for over fifteen years between plaintiff and the State of Texas ("the State") in the federal courts of Texas concerning plaintiff's gaming activities. (Def.'s Mot. at 3-6.) In 1993, plaintiff sued the State, seeking to compel it to negotiate a contract, pursuant to IGRA, to permit plaintiff to engage in certain types of gambling. (Def.'s Mot. at 3.) The District Court for the Western District of Texas granted plaintiff summary judgment, but the Fifth Circuit reversed the district court, holding that the Restoration Act, and not IGRA, governed the Pueblo's gaming activities. *Ysleta del Sur Pueblo*, 36 F.3d at 1336. Accordingly, the Fifth Circuit found that plaintiff's suit was barred by the Eleventh Amendment. *Id.*

Several years later, the State sued plaintiff under the Restoration Act to enjoin plaintiff from conducting certain gaming activities. (Def.'s Mot. at 5.) On August 3, 2009, plaintiff was cited for contempt for violation of the modified injunction entered in that case. (*Id.*) Since then, plaintiff has filed several status reports as required by the district court. (Def's Mot. at 5; Pl.'s

Opp'n at 18.) In one of those status reports, plaintiff alerted the district court that it is "seeking to have NIGC exercise regulatory jurisdiction on the Pueblo, and specifically to exercise its statutory authority to provide technical assistance and training to the Pueblo's Regulatory Commission." (Def's Mot., Ex. D at 7.)

## ANALYSIS

I.     **STANDARD OF REVIEW**

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of establishing that transfer is proper. *Veney v. Starbucks Corp.*, 559 F. Supp. 2d 79, 82 (D.D.C. 2008) (citing *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)). Here, defendant must make two showings. First, it must establish that the action could have been brought in the Western District of Texas originally. *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Second, it must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer. *Id.* (citing *Trout Unlimited*, 944 F. Supp. at 16). Courts have broad discretion to "'adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness.'" *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In exercising its discretion, the Court considers several private and public interest factors. *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *Reiffin*, 104 F. Supp. 2d at 51-52).

> Private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the

3

> extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home.

*Onyeneho*, 466 F. Supp. 2d at 3 (citing *Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002)).

## II. VENUE IN THE WESTERN DISTRICT OF TEXAS

In a civil action against an agency or department of the United States government, venue is proper in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(e). This action could have been brought in the Western District of Texas because NIGC's decision not to provide training to the Pueblo directly impacts the Pueblo's gaming operations in that district. *See Apache Tribe of the Mescalero Reservation v. Reno*, No. 96-cv-00115, slip op. at 5 (D.D.C. Feb. 5, 1996) (finding proper venue in New Mexico "because the case involves governmental action that will impact the Tribe's gambling operation which is located there"). Moreover, even if one were to accept plaintiff's less than persuasive argument that all events at issue in this case took place in the District of Columbia and that no property is the subject of this action, the case could still have been brought in the Western District of Texas because plaintiff resides there. *See* 28 U.S.C. § 1391(e) (where defendant is officer, employee, or agency of the United States, an action may be brought where plaintiff resides if no real property is at issue); *Rosales v. United States*, 477 F. Supp. 2d 213, 215-16 (D.D.C. 2007). Accordingly, the Western District of Texas is a proper venue for this case.

## III. CONSIDERATIONS OF CONVENIENCE AND JUSTICE

### A. Public Interest Considerations

The public interest considerations in this case weigh heavily in favor of transfer. The Western District of Texas' familiarity with the issues and local interest in deciding the controversy at home argue strongly in favor of transfer.[2] Additionally, transfer is supported by the interest in avoiding duplication of judicial resources and the possibility of inconsistent results.

Because plaintiff's claims are federal, the courts are presumed equally able to address the governing law. *See Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009) ("Since all federal courts are presumed to be equally familiar with the law governing federal statutory claims, neither venue is favored[.]" (internal citation omitted)); *Valley Cmty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 45 (D.D.C. 2002) ("As the action concerns federal law, neither court is better suited than the other to resolve these issues."). However, the Restoration Act "applies to two specifically named Indian tribes located in one particular state" – *i.e.*, Texas. *Ysleta del Sur Pueblo*, 36 F.3d at 1335. As defendant notes, the Western District of

---

[2] A third public interest consideration, the relative congestion of the dockets at issue, is neutral on the issue of transfer. In this district, "potential speed of resolution" is examined by comparing the median filing times to disposition in the courts at issue. *Parkridge 6, LLC v. U.S. Dep't of Transp.*, No. 09-cv-01478, 2009 WL 3720060, at *3 (D.D.C. Nov. 9, 2009); *see also F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31, 33 n.8 (D.D.C. 2008). The median time from filing to disposition in this district is 9 months; in the Western District of Texas, it is 8.3 months. (Def.'s Reply at 11; Pl.'s Opp'n, Ex. B at 5, Ex. C at 7.) This difference is not significant enough to weigh on the issue of transfer. *Osan Ltd. v. Accenture LLP*, No. 04-cv-01296, 2005 WL 2902246, at *5 (D.D.C. Sept. 30, 2005) ("The most recent data show that the median time to disposition in civil cases is 10.6 months in the District of Columbia and 10.8 months for the Eastern District of New York. This difference is too small to provide a basis on which to decide this motion."). Some courts also have considered the median time from filing to trial in making a decision regarding venue, *see, e.g.*, *Parkridge 6*, 2009 WL 3720060, at *3, but since this is an APA case and unlikely to go to trial, the Court finds such analysis unnecessary, although it notes that the median time from filing to trial in the Western District of Texas is less than half that of this jurisdiction. (Def.'s Reply at 11.)

Texas, unlike this district, has considerable experience in cases involving the Restoration Act. (Def.'s Reply at 9 (citing several cases involving the Restoration Act).) Moreover, the courts' respective knowledge of the parties and facts is also relevant. *See Cephalon*, 551 F. Supp. 2d at 31 (transferee "court's familiarity with these facts - and the law as applied to these facts - supports transfer . . . for judicial efficiency purposes"); *SEC v. Roberts*, No. 07-cv-00407, 2007 WL 2007504, at *5 (July 10, 2007) ("The proposed transferee district . . . would be more familiar with the facts of this case."); *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005). ("One of these factors is whether one circuit is more familiar with the same parties and issues or related issues than other courts." (internal citation omitted)). Although the particular legal issue in this case (*i.e.*, NIGC's decision not to provide the Pueblo with training) has not been litigated in Texas, the litigation over the past seventeen years, the ongoing post trial proceedings, and this case are all related to plaintiff's gaming activities and the regulation thereof. Therefore, this factor weighs heavily in favor of transfer to the Western District of Texas. *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 27 (D.D.C. 2002) (transfer to jurisdiction with experience with similar and possibly related cases was in the interest of judicial economy and efficiency).

"In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded by statute on other grounds*, 28 U.S.C. § 1404(a), *as recognized in Am. Dredging Co. v. Miller,* 510 U.S. 443, 449 n.2 (1994). "This rationale applies to controversies . . . requiring judicial review of an administrative decision." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003). The inquiry is "whether the impact of the litigation is local to one region." *Oil, Chem. & Atomic Workers Local*

*Union No. 6-418 v. NLRB*, 694 F.2d 1289, 1300 (D.C. Cir. 1982) (quoting *Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 1200, 1205 (D.C. Cir. 1981)). It is clear that this litigation, and in particular, the issue of NIGC's jurisdiction (or lack thereof) over plaintiff, has strong local implications, especially for the Pueblo, which is located in Texas. *See Cheyenne-Arapaho Tribe of Oklahoma v. Reno*, No. 98-cv-065, slip op. at 4 (D.D.C. Sept. 9, 1998) (justice better served by local resolution when issue affects Indian tribes that operate within the state); *see also Bergmann v. U.S. Dep't of Transp.*, No. 09-cv-1378, 2010 WL 1837703, at *7 (D.D.C. May 7, 2010) ("[T]he fact that plaintiff's cause of action arises under federal law does not mean that the subject of his lawsuit does not present an issue of local controversy."). Indeed, "the members of this District Court have repeatedly . . . transferr[ed] cases involving Indian gaming controversies back to the state in which the controversy and the gaming were located." *Santee Sioux Tribe of Nebraska v. NIGC*, No. 99-cv-528, slip op. at 8 (D.D.C. April 19, 1999). Thus, the potential local repercussions of this case militate in favor of transfer to Texas.

Most importantly, the Court finds that transfer is in the interest of justice in that it will avoid the duplication of judicial resources and possible inconsistent results. Several issues in this case overlap with or are related to[3] issues in the ongoing proceedings in the Western District of Texas. Moreover, this case squarely implicates the issue, discussed at length in the Fifth Circuit's decision in *Ysleta del Sur Pueblo v. Texas*, of IGRA's applicability to plaintiff. (*See* Compl. at 5 (seeking declaration that NIGC violated IGRA); Ex. C (relying on Fifth Circuit opinion in making decision that plaintiff's activities are not governed by IGRA).) The possibility that this Court's analysis could be inconsistent with that of the Fifth Circuit's or

---

[3] For example, plaintiff's attempt to compel NIGC to provide it with training stems directly from the Western District of Texas district court's ongoing oversight of plaintiff's gambling activities. (Def.'s Mot., Ex. D at 6.) As such, a decision regarding the relationship between NIGC and the Pueblo will directly affect proceedings in that case.

7

subsequent rulings by the Western District of Texas decidedly tips the balance in favor of transfer. *See Ledyard v. United States*, No. 95-cv-0880, 1995 WL 908244, at *2 (D.D.C. May 31, 1995) (avoiding "the possibility of inconsistent results" is in the interest of justice). As such, prior decisions from and pending proceedings in the Western District of Texas argue for transfer. *See Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987) ("The interests of justice are better served when a case is transferred to the district where related actions are pending.").

### B. Private Interest Considerations

Private interest considerations in this case are insufficient to outweigh the strong public interest in transfer. Since this an APA case, neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the analysis. *See Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 176 n.4 (D.D.C. 2009) (as "cases reviewed under the APA are generally limited to review of the administrative record, the convenience of witnesses and access to sources of proof do not carry significant weight"); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, No. 01-cv-1042, slip op. at 5 (D.D.C. Aug. 16, 2002) ("inconvenience [to parties] is somewhat mitigated . . . by the likelihood that the case will be decided through written motions and limited oral argument"). Although a plaintiff's choice of forum is generally given deference in determining whether a transfer of venue is justified, *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002), less deference is given to a plaintiff's choice when that choice is not plaintiff's home forum. *Shawnee Tribe*, 298 F. Supp. 2d at 24. The deference to plaintiff's choice is further mitigated if the "choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Trout Unlimited*,

944 F. Supp. at 16. As such, plaintiff's choice of forum is entitled to limited deference in this case. *See Shawnee Tribe*, 298 F. Supp. 2d at 25 ("[C]ourts in this district have a history of providing less deference to Native American Indian tribes when they have brought suit in this, their non-home forum."); *see also Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, No. 04-cv-1727, slip op. at 8 (D.D.C. May 2, 2005) (granting little deference to plaintiff's choice of forum because plaintiff, a federally-recognized Indian tribe, had no connection to this district). Finally, "just because the NIGC's decision was issued in the District of Columbia, does not mean that this is where plaintiff's claim 'arose.'" *Wyandotte*, No. 04-cv-1727, slip op. at 9-10 (citing *Shawnee*, 298 F. Supp. at 25). Plaintiff's claim grows out of gaming activity taking place in Texas; therefore, the claim arises out of that state.

In sum, none of these private considerations weighs heavily in favor of transfer. The public interest considerations, especially the interest in judicial economy and avoiding inconsistent results, outweigh any deference due to plaintiff's choice of forum.

## CONCLUSION

For the foregoing reasons, defendant's motion to transfer venue is **GRANTED**, and all other motions are **DENIED** as moot.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: August 17, 2010